UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MEGAN OZBURN, on behalf of M.O., a minor child,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>SODA SPRINGS SCHOOL DISTRICT NO. 150; SHARI MOULTON, individually and in her official capacity as Principal of Soda Springs High School; and DOES I-V, unknown individuals,<br><br>　　　Defendants. | Case No. 4:25-cv-00640-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants Soda Springs School District No. 150 and

Shari Moulton's Motion to Dismiss (Dkt. 9). For the reasons explained below, the

Court will grant the motion in part and deny it in part.

## BACKGROUND

Soda Springs High School has a longstanding tradition of allowing

graduating seniors to include personal "senior quotes" beneath their yearbook

photos. In keeping with this tradition, in the fall of 2025 Soda Springs High School

invited seniors to submit their quotes for consideration. Plaintiff M.O., who was

slated to graduate the following spring, submitted the following proposed quote:

> Make this make sense: I was forced to remove my hat all year
> so I can be identified, but on graduation day a cap is ok, and we
> will be dressed the same?

M.O. says his quote was intended as a critique of the school's hat policy, "questioning the inconsistency and logic of its enforcement." *Compl.* ¶ 16, Dkt. 1-2.

Kelly Moore, the school's yearbook advisor, rejected M.O.'s proposed quote, stating it did not meet content guidelines. Her email explained that quotes "'containing violence, discrimination, explicit language, or other inappropriate content will not be accepted.'" *Id.* ¶ 21. Plaintiff, however, alleges that no written guidelines had ever been published.

M.O. responded to Moore's rejection by submitting a new proposed quote, which stated: "I showed up, worked hard, questioned the hat policy in my original quote and it was declined. So much for my first amendment rights!" When he submitted this quote, M.O. explained the meaning behind his original submission (critique of the hat policy) and asked for further clarification regarding how his quote violated the stated policy.[1] A week later, Defendant Shari Moulton, the high

---

[1] Given plaintiff's allegation that "no written guidelines had ever been published," the Court presumes M.O. is referring to Ms. Moore's responsive email, which prohibited violence, discrimination, explicit language, and other inappropriate content.

school principal, responded to M.O.'s email stating:

> The policy you listed states at the end "other inappropriate content." I feel that putting down the school or its rules is inappropriate, therefore, both of your quotes are being denied.

After receiving this email, M.O. submitted his third and final proposed quote which stated, "1st Amendment rights NOT protected here." Fifteen minutes later, Moulton sent a message to all seniors, stating, "Due to some unfortunate events, senior quotes will not be published in the yearbook this year."  M.O. says the decision to cancel senior quotes punished him "for questioning school policy and invoking constitutional protections." *Id.* ¶ 28.

Separately, Plaintiff Megan Ozburn alleges that Defendants retaliated against M.O. because of her advocacy on behalf of her younger child. The complaint alleges that Ozburn filed complaints under the IDEA and Section 504, that a due-process proceeding was pending at the time of the yearbook incident, and that Defendants were aware of those proceedings.

In October 2025, Ozburn filed this action in state court, which was later removed to this Court. Ozburn's first claim for relief alleges that Defendants violated M.O.'s first amendment rights and engaged in viewpoint discrimination when they denied his quotes and later canceled all senior quotes. Ozburn's second claim alleges that these same actions violated M.O.'s right to free speech under Article I, § 9 of the Idaho Constitution. The third and fourth claims for relief allege

that Defendants' actions were retaliatory both against M.O. for his protected speech and against Ozburn for filing IDEA and Section 504 complaints with the Idaho State Department of Education on behalf of her younger child. Ozburn seeks declaratory judgment and injunctive relief for M.O.'s federal and state constitutional claims.

Defendants now move to dismiss the case in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

A dismissal pursuant to Rule 12(b)(6) is appropriate where a complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued 2 months after *Iqbal*). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it

determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13,* 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted).

## DISCUSSION

Plaintiffs' complaint alleges six claims for relief. The first four are alleged as: (1) "Violation of Constitutional Rights – First Amendment Free Speech and Viewpoint Discrimination;" (2) "Violation of Idaho Constitutional Rights – Free Speech"; (3) "First Amendment Retaliation (42 U.S.C. § 1983)"; and (4) "Retaliation." The fifth and sixth claims are for "declaratory judgment and injunctive relief." Defendants seek dismissal of all claims.

The Court will discuss each claim in turn below. Before doing so, however, the Court will note that the motion strays beyond the four corners of the complaint. The motion is accompanied by various exhibits, and defendants rely on facts from those documents in moving to dismiss. *See Motion Mem.* Dkt. 9-1, at 15-19. The exhibits include a notice directed to the attention of the "Class of 2025" regarding the "SSHS Yearbook." *See* Dkt. 9-1, at 19. This notice contains guidelines for senior quotes, contradicting the complaint's allegation that "no written guidelines

were ever published." *Compl.*, ¶ 20, Dkt. 1.  Although there are various exceptions to the rules forbidding courts from relying on extraneous documents in resolving a Rule 12(b)(6) motion, none apply to this notice. Accordingly, the Court will restrict itself to the allegations in the complaint in ruling on this motion.

With these ground rules in place, the Court will turn to the substantive arguments.

## A.   Federal Constitutional Claim

Defendants contend that M.O.'s claim for violation of his First Amendment rights must be dismissed because schools are entitled to impose reasonable restrictions on the content of a school-published yearbook. This argument carries some force, given the Supreme Court's decision in *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 266 (1988). The central teaching of *Hazelwood* is that educators do not offend the First Amendment by exercising editorial control over student speech in school-sponsored publications so long as their actions are reasonably related to legitimate pedagogical concerns. Still, though, the Ninth Circuit has held that viewpoint discrimination is "impermissible no matter the forum." *See Nurre v. Whitehead*, 580 F.3d 1087, 1095 n.6 (9th Cir. 2009). In other words, even when school-sponsored speech is at issue—in a nonpublic forum— schools cannot engage in viewpoint discrimination.

Thus, even crediting defendants' assertion that the school yearbook is a nonpublic forum, M.O. has plausibly alleged viewpoint discrimination. *See generally Planned Parenthood of S. Nevada, Inc. v. Clark Cnty. Sch. Dist.,* 941 F.2d 817, 819 (9th Cir. 1991) (holding that a school yearbook was a nonpublic forum). He alleges that Defendants denied his proposed quotes because they expressed a disfavored view on a school policy. That qualifies as a point of view, and "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995); *see also Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 394 (1993) ("The principle that has emerged from our cases 'is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.'"). Rejecting the quote solely because it expresses a critical point of view about the hat rule—while presumably allowing positive or neutral quotes on this subject—would constitute impermissible viewpoint discrimination. *See generally Planned Parenthood of S. Nevada, Inc.*, 941 F.2d 817.

Defendants argue that they properly rejected M.O.'s proposed quotes because the quotes were "*not* neutral and expressed a message contrary to the District policy." *Mtn. Mem.*, Dkt. 9-1, at 8. But the point here is that the school

should draw lines based on content—not viewpoint. Here, for example, the school might have imposed a viewpoint-neutral rule by prohibiting discussion of school rules or policies (positive or negative) in senior quotes. But at this stage, M.O. has plausibly alleged that Defendants drew lines based on viewpoint (criticism of school rules is not permitted) rather than content. Accordingly, the motion to dismiss Claim 1 will be denied.

## B.     State Constitutional Claims

Turning to M.O.'s state constitutional claims, the Court will grant the motion in part and deny it in part.

Beginning with M.O.'s second claim for relief—which alleges violation of his rights under the Idaho constitution—the Court will grant the motion to the extent M.O. seeks damages. As the District of Idaho has concluded before, no Idaho statute serves a function analogous to that of 42 U.S.C. § 1983 by creating a cause of action for violations of Idaho's constitution.[2]  Without such a statutory

---

[2] *Hamell v. Idaho Cnty.*, No. 3:16-CV-00469-EJL, 2017 WL 2870080, at *5 (D. Idaho July 5, 2017) (citing *Kangas v. Wright*, 2016 WL 6573943, at *6 (D. Idaho Nov. 4, 2016)); *see also Thomas v. Cassia Cnty., Idaho*, No. 4:17-CV-00256-DCN, 2019 WL 5270200, at *10 (D. Idaho Oct. 17, 2019) ("No Idaho authority suggests the existence of statutory or direct causes of action for violations of the Idaho Constitution.") (citing *Campbell v. City of Boise*, 345 Fed. Appx. 299, 300 (9th Cir. 2009)); *Hancock v. Idaho Falls School Dist.* No. 91, 2006 WL 1207629, at *3 (D. Idaho May 2, 2006) (finding no direct cause of action under the Idaho Constitution nor any Idaho statute creating a cause of action for violations of the Idaho Constitution); *McCabe v. Gonzales*, No. 1:13-CV-00435-CWD, 2015 WL 5679735, at *9 (D. (Continued)

hook, a plaintiff cannot bring a standalone claim for damages premised on an alleged violation of the Idaho constitution. Accordingly, the second claim for relief will be dismissed with prejudice to the extent M.O. seeks damages.

The Court reaches a different conclusion, however, to the extent M.O. seeks prospective relief based on an alleged state constitutional violation. The Court will deny the motion to dismiss this form of relief (requested in the second and sixth claims), though it will do so without prejudice. As discussed below, defendants have separately argued that plaintiff's requests for prospective relief are moot. They raised that argument for the first time on reply, however, which did not afford plaintiff an opportunity to respond. Accordingly, the Court will deny the motion without prejudice to defendants' renewing their challenge to M.O.'s request for prospective relief based on mootness principles.

## C.   Retaliation Claims

### 1. M.O.'s Retaliation Claim

The Court next turns to Ozburn's retaliation claims. As noted, plaintiffs allege two separate retaliation claims against Defendants. First, M.O. alleges that Defendants' refusal to publish his quotes and the cancellation of all senior quotes

---

Idaho Sept. 25, 2015) ("No direct cause of action exists for violations of the Idaho Constitution.").

were retaliatory against him. Second, M.O.'s mother, Megan Ozburn, alleges that Defendants' conduct related to M.O.'s quotes was retaliatory against Ozburn herself because she had filed IDEA and Section 504 complaints against the school district on behalf of her younger child. Defendants say both claims should be dismissed.

The Court will begin with M.O.'s First Amendment retaliation claim. These claims proceed in two stages. First, a plaintiff must prove that: (1) they engaged in a constitutionally protected activity; (2) as a result, they were subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). "If the plaintiff makes this initial showing, the 'burden shifts to the defendant to establish that it would have reached the same decision even in the absence of the protected conduct.'" *CarePartners, LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

M.O. has alleged enough to survive a motion to dismiss. First, he allegedly engaged in protected speech activity by criticizing the school's hat policy and asserting his First Amendment rights. Second, in response, Principal Moulton

canceled all senior quotes. At the pleading stage, the allegation that the senior-quote opportunity was ended for the entire class just minutes after a student asserted his rights satisfies the "adverse action" element. Such an action would chill a person of ordinary firmness from engaging in the protected activity. Third, and finally, plaintiffs allege that the quotes were canceled 15 minutes after M.O.'s final submission. This tight temporal sequence, coupled with the subject matter of the speech, plausibly suggests a retaliatory motive. Defendants' alternative explanation and factual disputes about motives cannot be resolved at this stage. Accordingly, Defendants' motion to dismiss the First Amendment retaliation claim will be denied.

### 2. Megan Ozburn's Retaliation Claim

The Court will dismiss Plaintiff Megan Ozburn's retaliation claim, however. As noted, Ms. Ozburn alleges that Defendants retaliated after she filed administrative complaints and initiated due process proceedings on behalf of her younger son, L.O,, under the IDEA. *See Compl.* ¶¶ 68–71.

Federal disability laws prohibit retaliating against individuals who engage in protected activity. *See, e.g.,* 34 C.F.R. § 100.7(e); *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 825–27 (9th Cir. 2009). Ms. Ozburn adequately alleged that she engaged in protected activity; she alleges that she "fil[ed] IDEA and Section 504 complaints with the Idaho State Department of Education." *Compl.*

¶ 68, Dkt. 1-2. The problem, however, is that Ms. Ozburn fails to allege that she herself suffered a concrete injury sufficient to confer standing to pursue a retaliation claim.  Instead, she alleges that Defendants "retaliated against her and her family by targeting M.O. with censorship and exclusion from yearbook participation." *Id.* ¶ 70. That alleged injury concerns only M.O. There is no allegation supporting the conclusion that Ozburn herself suffered a concrete injury distinct from M.O.'s alleged injuries.

In her responding brief, Ozburn correctly points out that parents may pursue retaliation claims when they are subjected to retaliation for exercising rights protected under federal disability laws. Still, though, parents seeking to allege such a claim logically need to allege an injury to themselves—and one that is distinct from the injury allegedly sustained by the child. *See Round Rock Indep. Sch. Dist. v. Amy M.*, 540 F. Supp. 3d 679, 684 (W.D. Tex. 2021) (parent had standing because she alleged injuries "distinct from any injuries sustained by" her child); *cf. Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1291–92 (D. Or. 2001) (rejecting parents' claims where they failed to allege a separate and direct injury to themselves).

The complaint, as presently pleaded, fails to plausibly allege such an injury. The Court will therefore grant the motion to dismiss this claim. The Court will

MEMORANDUM DECISION AND ORDER - 13

dismiss the claim with leave to amend, however, because it cannot conclude that amendment would necessarily be futile.

### D.    Claims Against Defendant Shari Moulton

Defendants next ask the Court to dismiss all claims against Defendant Shari Moulton, who is sued in both her official and individual capacities. They argue that the official-capacity claims are duplicative of the claims against the School District and that the individual-capacity claims should likewise be dismissed because they serve no independent purpose.

Defendants are correct with respect to the official-capacity claims. A suit against a public official in her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Accordingly, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Because the Soda Springs School District is already named as a defendant, the official-capacity claims against Moulton are redundant and will be dismissed.

The Court reaches a different conclusion with respect to the individual-capacity claims. The complaint alleges that Moulton personally participated in the challenged conduct by rejecting M.O.'s proposed senior quotes, explaining why

MEMORANDUM DECISION AND ORDER - 14

they were denied, and ultimately canceling publication of senior quotes. Those allegations are sufficient, at this stage, to state claims against Moulton in her individual capacity. Defendants' opening brief offers no independent basis for dismissing those claims beyond the assertion that they are duplicative of the claims against the District, and that argument fails with respect to individual-capacity liability under 42 U.S.C. § 1983.

On reply, Defendants advance a different argument, asserting that the federal disability statutes do not permit individual liability. The Court need not resolve that issue here. As explained above, Count Four—the only claim related to federal disability rights—will be dismissed with leave to amend on standing grounds. The other claims that have survived this motion arise under § 1983 and are asserted against Moulton based on her alleged personal participation in the challenged conduct. At this stage, Defendants have not demonstrated that those individual-capacity claims should be dismissed.

Accordingly, the motion will be granted insofar as it seeks dismissal of the official-capacity claims against Moulton and denied in all other respects.

E.    **Mootness – The Fifth Claim for Relief**

Finally, the Court will address Defendants' argument—made for the first time on reply—that plaintiffs' requests for injunctive and declaratory relief are moot. *See Reply,* Dkt. 13, at 9. The Court is inclined to agree to the extent plaintiffs

are seeking prospective relief rather than damages or nominal damages.

According to the complaint, M.O. was a senior during the 2025–2026 school year and expected to graduate in the spring of 2026. It is now the summer of 2026. It therefore appears likely that M.O. has graduated, the yearbook has been published, and Plaintiffs' request for prospective relief is now moot.

Nonetheless, the Court declines to dismiss the requests for prospective relief at this time. Defendants first raised mootness in their reply brief, depriving Plaintiffs of an opportunity to respond. Moreover, Defendants' argument necessarily relies on facts occurring after the filing of the complaint.

The Court anticipates that the parties will address mootness in a future motion or stipulation. If no such motion or stipulation is filed, the Court will require supplemental briefing before trial and, absent some showing that Plaintiffs' request for prospective relief remains justiciable, anticipates dismissing the request for injunctive relief.

## ORDER

**IT IS ORDERED that** Defendants' Motion to Dismiss (Dkt. 9) is **GRANTED IN PART and DENIED IN PART** as follows:

1. The motion is **DENIED** as to Plaintiff's First Claim for Relief.

2. The motion is **GRANTED IN PART AND DENIED IN PART** as to Plaintiff's Second Claim for Relief. To the extent Plaintiff seeks

monetary damages, the motion is **GRANTED** and the request is **DISMISSED WITH PREJUDICE.** In all other respects, the motion is **DENIED WITHOUT PREJUDICE TO RENEWAL**.

3. The motion is **DENIED** as to Plaintiff's Third Claim for Relief.

4. The motion is **GRANTED** as to Plaintiff Megan Ozburn's Fourth Claim for Relief. That claim is **DISMISSED WITH LEAVE TO AMEND**. Any amended complaint shall be filed within **21 days** of this Order.

5. The motion is **DENIED WITHOUT PREJUDICE TO RENEWAL** as to Plaintiff's Fifth Claim for Relief. This "claim" is actually just a request for a particular remedy (injunctive and declaratory relief). The Court will deny the request for dismissal of the requested remedies at this time.

6. The motion is **DENIED WITHOUT PREJUDICE TO RENEWAL** as to Plaintiff's Sixth Claim for Relief.

7. The official-capacity claims against Defendant Shari Moulton are **DISMISSED**. The motion is denied as to the claims asserted against Defendant Moulton in her individual capacity.

DATED: July 29, 2026

B. Lynn Winmill
U.S. District Court Judge